UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   NO. 2:17-CR-43 |
| | ) |
| FRANCISCO RIVERA, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before me on Francisco Rivera's motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic, filed by his counsel.  [DE 60.]  Rivera is a 31 year old male who is in good health and is currently incarcerated at FCI Terre Haute in Terre Haute, Indiana, which has a relatively low rate of infection.  Rivera already contracted COVID-19 in prison in November 2020, and he remained asymptomatic the entire time.  Rivera has not claimed any underlying health conditions other than he was a former smoker, but argues his sentence should be reduced because the worsening global pandemic itself provides an extraordinary and compelling reason to release vulnerable prisoners.  The government filed a memorandum in opposition on February 4, 2020. [DE 63.]  Rivera filed a reply on February 11, 2021. [DE 64.]

I'll begin with the procedural background of the case, like usual.  On February 5, 2019, I sentenced Rivera to a total of 74 months imprisonment after he pleaded guilty to one count of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1), and one count

of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). [DE 41, 44, 57.] A confidential source purchased cocaine from Rivera. [PSR ¶¶ 11-13.] After he was arrested for dealing cocaine, Rivera's house was searched and law enforcement found approximately 1.2 kilograms of cocaine, 70 pounds of high-grade marijuana, and four firearms including an AR-15, as well as thousands of dollars in cash. [PSR ¶ 14.] Rivera's offense level was 23 and he had a criminal history category of I. I imposed a below-Guidelines sentence of 74 months. Currently, Rivera has served approximately 21 months (less than half of his full sentence). [DE 60 at 2.]

This request is for compassionate release under the First Step Act. Rivera bears the burden of showing he is entitled to compassionate release. *See United States v. Greenhut*, No. 2:18-CR-00048-CAS-1, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31. 2020). Compassionate release is "an extraordinary and rare event." *United States v. Mangarella*, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, at *2-3 (W.D.N.C. Mar. 16, 2020).

Before addressing the merits, I must first look at the exhaustion requirement. The First Step Act provides that I can consider a motion directly from the defendant after he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The Seventh Circuit has recently clarified that "the exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, __ F.3d __, No. 20-2445, 2021 WL 236622, at

2

*3 (7th Cir. Jan. 25, 2021) (emphasis in original).  Rivera attaches as an exhibit an e-mail request he submitted on April 16, 2020 to the warden for compassionate release, and states he has received no response. [DE 60 at 2, DE 60-2.]   However, the government contacted the BOP and was informed that there is no record of a reduction in sentence request from Rivera on file. [DE 63 at 4.]  Nevertheless, the government's stance is that because it appears that Rivera at least made an attempt to submit a request for release, "it appears the Defendant has sought administrative remedies with no response within 30 days." [*Id.* at 4-5.]  In this case, even giving Rivera the benefit of the doubt and assuming that he properly exhausted his administrative remedies, I would still deny Rivera's request on the merits, as explained below.

The First Step Act provides that the Court may reduce the term of imprisonment after considering the factors set forth in section 3553(a), if it finds that "extraordinary and compelling reasons warrant such a reduction" and that such a reduction "is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  In other words, the compassionate release statute directs me to make three considerations: (1) whether a reduction is consistent with the factors listed in section 3553(a); (2) whether extraordinary and compelling reasons warrant a sentence reduction; and (3) whether a reduction would be consistent with the Sentencing Commission's policy statements.  All three considerations weigh against release in this case.

The section 3553(a) factors, which are well-known by this point, include the

nature and circumstances of the offense and history and characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant; and the kinds of sentences and sentencing range for the applicable category of offense committed. 18 U.S.C. § 3553(a). Rivera's crimes – distributing cocaine, and possessing firearms in furtherance of drug trafficking, are both very serious crimes. The gravity of Rivera's crimes is magnified by the large quantity of drugs recovered from his home (over 70 pounds of marijuana and over a kilogram of cocaine), along with four firearms (one which was a semiautomatic rifle). Rivera was clearly a large-scale drug dealer. Although he did not have a criminal history prior to this conviction, I already took that into account when I gave him a below-Guidelines sentence. At this stage, Rivera still has more than half of his sentence left to serve. The Section 3553(a) factors of punishment, deterrence, and promotion or respect for the law do not warrant release in this case. *See, e.g., United States v. Picazzo*, No. 2:18-CR-122-PPS, 2020 WL 5757984, at *2 (N.D. Ind. Sept. 28, 2020) (denying request for compassionate release in part due to the serious and dangerous nature of defendant's offense); *United States v. Cochran*, No. 2:06 CR 114, 2020 WL 2092836, at *5 (N.D. Ind. May 1, 2020) (denying motion for compassionate release because "[r]equiring defendant to serve the remainder of his sentence would promote respect for the law and provide just punishment for defendant's offense.").

In turning to whether there are "extraordinary and compelling reasons [that]

4

warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission" 18 U.S.C. § 3582(c)(1)(A), I note that the pertinent policy statement is set forth in the United States Sentencing Guidelines (USSG) § 1B1.13.  This would allow me to reduce Rivera's sentence if I determined extraordinary and compelling reasons warrant the reduction, Rivera is not a danger to the safety of any person or the community, and the reduction is consistent with the policy statement.  USSG § 1B1.13.  The Sentencing Commission also provided specific examples of what constitutes an extraordinary and compelling circumstance, which include: the defendant is suffering from a terminal illness; the defendant is suffering from a serious physical or medical condition; the death or incapacitation of the caregiver of the defendant's minor child or minor children or upon the incapacitation of the defendant's spouse/registered partner when the defendant would be the only caregiver for that spouse/registered partner; or other reasons as determined by the Director of the BOP.  USSG § 1B1.13 cmt. n. 1.

     There are no compelling reasons for release in this case.  Rivera does not suffer from any serious physical, cognitive, functional, or mental impairment that would substantially diminish his ability to provide self-care within the prison.  Even considering the general risk of COVID-19, Rivera still has not produced compelling reasons for release.  Rivera is quite young (31 years old) and seemingly has no underlying health conditions that would heighten any risk of COVID-19 complications, other than Rivera stating in his e-mail to the warden that he is a former smoker.  The

5

PSR provides that he is in good health [PSR ¶ 57], and his prison medical records do not indicate any issues or health problems. [DE 60-1.]  Rivera claims to be a former smoker [DE 60-2 at 2], and the CDC has recognized that "[b]eing a current or former cigarette smoker increases your risk of severe illness from COVID-19." Https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#smoking (last viewed February 12, 2021).  Nevertheless, considering Rivera's youth and his overall good health, the fact that he used to smoke cigarettes (without knowing more about how long he smoked, how much he smoked, and any other details about the state of his lungs), is a factor to consider, but not a weighty one.

Although Rivera did not front this issue in his opening motion, according to the prison medical records he submitted, he tested positive for COVID-19 in November 2020, was treated, remained asymptomatic, and completed his isolation in December 2020 with no particular harmful effects. [DE 60-1 at 4.]  This is obviously a good sign since he already had COVID-19 with no complications, and he would likely not be able to contract it again for some time.  Courts across the country have denied relief where the risk is based only on the fear of re-contracting COVID-19.  *See, e.e., United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (finding inmate had risk factors, but endured COVID-19 without complications and was asymptomatic, so there was no extraordinary circumstances); *United States v. Lampkin*, No. 17-cr-399-WJM,  2020 WL 4016115, at *2 (D. Colo. July 16, 2020) (denying motion for

compassionate release where 32-year old inmate tested positive and recovered despite the fact he had asthma); *United States v. Cabrera*, No. 10-cr-20016-JES-DGB, 2020 WL 2549941, at *4 (C.D. Ill. May 19, 2020) (denying compassionate release where inmate contracted COVID-19 "[b]ecause [defendant] remains asymptomatic despite testing positive for COVID-19, the risk of him suffering severe complications from the virus is significantly diminished compared to others in the BOP who have either not contracted the virus or who have contracted the virus and exhibited symptoms or complications."); *United States v. McCallum*, No. 14-CR-476-12(CS), 2020 WL 7647198, at *1 (S.D.N.Y. Dec. 23, 2020) ("Now that he has weathered the disease, a sentence reduction based on the risk of contracting it no longer makes sense.").

Rivera's general concern about the virus does not justify compassionate release on its own. Indeed, "[g]eneral concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence set forth in the Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13." *United States v. Eberhart*, No. 13-cr-00313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.").

As the government sets out in its response, the BOP authorities have undertaken

7

extraordinary measures and efforts to keep inmates and staff alike safe and healthy. [DE 63 at 13-16.] As of the date of the government's response, FCI Terre Haute had 28 positive inmates and 19 positive staff members. [DE 63 at 16.] While no amount of COVID-19 is good in a prison, these numbers are lower than many other institutions across the country. Additionally, I am cautiously optimistic about the vaccine rollout. According to the government, as of December 30, 2020, doses of the vaccine have been distributed to certain BOP facilities, including Terre Haute. [DE 63 at 17.] As of February 2, 2020, 209 staff and 344 inmates at Terre Haute have been inoculated against COVID-19. [*Id.*] Hopefully the vaccine, especially as it becomes more readily available, will improve conditions within the prisons.

Finally, Rivera states in his reply that due to COVID-19, he has not been able to see visitors, including his family members and his 8 year old daughter. [DE 64 at 2.] This is a terrible and very sad consequence of the virus, but not an extraordinary reason for release.

While I am sympathetic to Rivera's ongoing concern about the virus, because Rivera is young and healthy, and has already had COVID-19 with no serious symptoms or complications, this is simply not a compelling reason for reduction in his sentence. *See, e.g., United States v. Rowsey*, No. 15-cr-108-pp, 2020 WL 4048500, at *5 (E.D. Wis. July 20, 2020) (denying compassionate release where defendant was young and healthy, and recognizing if "fear of the virus was a basis for granting a sentence reduction for compassionate release, there would no longer be inmates in any jails or prisons.").

**Conclusion**

For the aforementioned reasons, Francisco Rivera's motion for a reduction of sentence or compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) due to the COVID-19 pandemic [DE 60] is DENIED. Rivera has not shown the factors under section 3553(a) warrant release or that extraordinary and compelling reasons warrant such a reduction under § 3582(c)(1)(A).

SO ORDERED.

ENTERED: February 16, 2021.

                                         /s/   Philip P. Simon
                                        PHILIP P. SIMON, JUDGE
                                        UNITED STATES DISTRICT COURT